243 F.Supp. 755 (1965)
John WOODY et al., Plaintiffs,
v.
STERLING ALUMINUM PRODUCTS, INC., et al., Defendants.
No. 63 C 345(3).
United States District Court E. D. Missouri, E. D.
July 1, 1965.
*756 *757 *758 Jerome J. Duff, St. Louis, Mo., for plaintiffs.
Bartlett, Muldoon, Stix & Bartlett, St. Louis, Mo., for defendant Sterling Aluminum Products, Inc.
Bartley & Siegel, Clayton, Mo., for defendants International Ass'n of Machinists and others.
Norris Allen and Wm. B. Anderson, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., for defendant Lincoln Nat. Life Ins. Co.
*759 REGAN, District Judge.
This matter is now before the Court on motions directed to all counts of plaintiffs' second amended complaint, other than Count IV, which has heretofore been voluntarily dismissed by plaintiffs. Also before the Court is plaintiffs' motion for a new trial on the Summary Judgment heretofore entered on Count III of plaintiffs' first amended complaint. The second amended complaint was filed pursuant to leave granted on January 26, 1965, after the Court sustained motions of various defendants to dismiss Counts I, II, and IV of the first amended complaint. A renewed "plethora of motions" has resulted.
Rule 8(a) requires that every pleading setting forth a claim for relief shall contain both a short and plain statement of the grounds upon which the court's jurisdiction depends and a short and plain statement of the claim showing that the pleader is entitled to relief. Moreover, Rule 8(e) requires that "[e]ach averment of a pleading shall be simple, concise, and direct." The second amended complaint is violative of Rule 8.
The complaint we are considering is plaintiffs' third essay to state one or more claims for relief within the jurisdiction of this Court. In attempting to defend their first amended complaint, and urging that they be allowed "to commence" a voyage in what they designated "as a relatively uncharted sea", plaintiffs conceded: "Plaintiffs are aware that the complaint herein is lengthy, involved and sometimes complicated in its terminology."
As applied to the second amended complaint, the foregoing characterization is an understatement. In this complaint, plaintiffs have not only retained the verbosity and the involved averments of the first amended complaint, but have woven additional allegations therein intermingling (often in the same sentence) numerous inconsistent statements. The statement of plaintiffs' claim is neither short nor plain. So, too, the averments of the complaint are neither simple, concise nor direct. Granted that the nature of this case may well require a more lengthy and detailed statement of plaintiffs' claims than would ordinarily be adequate, we nevertheless find no justification for the unduly prolix, involved, repetitious and confusing nature of the pleading.
By way of example, without any proper separation of the inconsistent allegations, plaintiffs plead that defendants conspired and colluded (and successfully) to draft the collective bargaining agreement so that it authorized, without legal liability, the very conduct which is alleged to constitute a breach of the agreement, and damages are sought both for the collusion and the breach of contract.
Although Rule 8 authorizes pleading in the alternative and without regard to consistency, we believe that at the very least inconsistent claims should be separately stated, so that the other party may be enabled to "state in short and plain terms his defenses to each claim" (Rule [8]). Defendants are confronted with an almost impossible task of preparing responsive pleadings unless the Court intervenes, and as to Count I, defendants must speculate as to the number and nature of the claims plaintiffs intend to set forth. This problem is posed not merely by the wordiness or even the redundancy of the complaint, but also by the disorganized, and equivocal verbiage employed, replete with "and/or"s.
The second amended complaint wholly fails to "comply with the fundamental principles of good pleading." Cf. Catanzaritti v. Bianco, D.C.Pa., 25 F. Supp. 457; Collier v. First Michigan Cooperative Housing Association, 6th Cir., 274 F.2d 467, and Kappus v. Western Hills Oil, Inc., D.C.Wis., 24 F.R.D. 123, 2 F.R.Serv.2d, 4 F. 22, Case 2.
As we have noted, Rule 8(a) also requires the pleading to set forth a short and plain statement of the grounds upon which the court's jurisdiction depends. In paragraph 1 of Count I (realleged and adopted by reference in each of Counts *760 II, V and VI) plaintiffs assert that jurisdiction lies under various enumerated statutes of the United States, leaving to the Court and the other parties the task of analyzing and determining the relevancy and pertinency of the cited statutes to each claim and in relation to each of the defendants.
Some of the cited statutes appear to have been chosen at random. Thus, plaintiffs assert, but without any explanation, that the Court has jurisdiction of the action under the Railway Labor Act, 45 U.S.C.A. §§ 151 to 158. Plaintiffs also cite the Labor-Management Reporting and Disclosure Act of 1959, Title 29 U.S.C.A. §§ 401, 402, 411 to 415, and 433, all of which we have read in light of the averments of the complaint, but still remain at a loss as to their pertinency. Among other statutory citations, apparently picked indiscriminately are Sections 160 and 163 of Title 29, the National Labor Relations Act. There are, of course, other statutory provisions which conceivably could have application, but only as to some defendants and to some claims. Enough has been stated to demonstrate that plaintiffs have not set forth a short and plain statement of the grounds upon which the court's jurisdiction depends, as contemplated by Rule 8.
Plaintiffs' derelictions in complying with Rule 8 have increased with each amended complaint. We hold that their gross disregard of the explicit requirements of Rule 8(a) and (e) require the dismissal of the second amended complaint. Ordinarily, such a dismissal should be without prejudice, with leave to file still another amended complaint which, hopefully, will be in conformity with the requirements of the rule. In determining whether leave to amend should be granted in this case, we now consider the various motions filed by the defendants relating to the sufficiency of the second amended complaint both on the merits and on the question of jurisdiction. We also consider plaintiffs' motion for summary judgment. We bear in mind that a complaint (and this necessarily includes each count thereof) "is to be liberally construed, and a dismissal is not warranted unless it is clear that plaintiff would be entitled to no relief under any state of facts that might be proved in support of the complaint." Fowler v. Southern Bell Telephone & Telegraph Company, 5th Cir., 343 F.2d 150, 153. See also Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 2 L.Ed.2d 80, and Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506, 79 S.Ct. 948, 3 L.Ed. 2d 988.
As filed, the present complaint had six counts. Count IV is directed solely against defendants Larry Connors, Trustee, Bela Deutsch, Trustee, and Reverend Poelker, Trustee. On February 17, 1965, plaintiffs dismissed this count without prejudice. However, plaintiffs do not attempt to state any claim against these defendants in any other count of the complaint. It follows that this action should be dismissed as to said defendants for failure to state a claim.
The remaining defendants are Sterling Aluminum Products Co. (Sterling); International Association of Machinists (International); District No. 9, International Association of Machinists (Union); Local Lodge 41 of the International Association of Machinists (Local); Larry Connors, individually, directing business representative of District No. 9 (Connors) and Russell Davis, individually, business representative of District No. 9 (Davis). International, District No. 9 and Local are sometimes hereinafter referred to collectively as Unions, and Connors and Davis as labor officials or union representatives.
Count III, which affects only defendant Sterling, merely readopts and realleges by reference all of the paragraphs of Count III of the first amended complaint, expressly taking note, however, of the summary judgment which this Court heretofore entered against plaintiffs and in favor of defendant Sterling upon submission of their cross-motions for summary judgment on Count III. The reallegation of Count *761 III of the first amended complaint apparently was due to plaintiffs' desire to avoid any contention that they have abandoned the claim by pleading over and to evidence their intention to preserve it. At the oral argument of plaintiffs motion for new trial on Count III, plaintiffs counsel stated that although he would not withdraw the motion he did not care to press it. The Court has duly considered the motion for new trial and has concluded that the motion should be and it is hereby overruled. However, we will hereafter advert to Count III and the claim therein stated in ruling the issues presented by the motions to dismiss Counts I, II, V and VI.
All defendants have moved to dismiss Count I and plaintiffs have filed a motion for summary judgment based on that count, but directed only against defendant Sterling. We briefly review the course of this proceeding in order to place the present motions in their proper prospective. This suit stemmed from the action of Sterling, more than six months prior to the filing of the original complaint, in closing its St. Charles plant in which plaintiffs had been employed under a collective bargaining agreement negotiated on their behalf by District No. 9, as the bargaining agent of plaintiffs. Plaintiffs motion for partial (money) summary judgment against Sterling, filed October 23, 1963, was rendered functus officio by the filing of plaintiffs first amended complaint on November 16, 1963. On February 7, 1963, plaintiffs again moved for an order of a money summary judgment on Count III, and Sterling also filed a motion for summary judgment on the merits on that Count. In our memorandum opinion of January 21, 1965, 244 F.Supp. 84, this Court sustained Sterling's motion for summary judgment, overruled plaintiffs' similar motion, and sustained all motions of defendants to dismiss Counts I, II, and IV of the first amended complaint, in part for lack of jurisdiction and in part for failure to state a claim on which relief can be granted. That memorandum opinion should be read in conjunction with the present opinion, although, regrettably, our disposition of the present motions will make it necessary to replow some of the ground covered by our earlier opinion.
We take note of the fact that in urging their various motions for summary judgment, plaintiffs have set forth "certain unassailable and indisputable facts and circumstances" which to the extent we find them relevant and "indisputable" we have taken into consideration in ruling the instant motions. See Civil Rule 12(b) (6). The collective bargaining agreement, referred to as Exhibit "A" in the second amended complaint and alleged to be attached thereto has not in fact been so attached although it was annexed to the original complaint. We find this agreement also set forth in an affidavit filed by Sterling. And plaintiffs' motion for summary judgment refers to and relies upon that agreement. In these circumstances, we consider Exhibit "A" before us for all purposes. As in Greater Kansas City Laborers Dist. Council v. Builders' Ass'n, D.C.D.Mo., 213 F.Supp. 429, 431, "[W]e shall * * treat defendant's motion to dismiss as a motion for summary judgment in order that the entire collective bargaining agreement be a part of the record." See also International Longshoremen's & Warehousemen's Union v. Kuntz, 9 Cir., 334 F.2d 165, 168 as to the propriety of treating a motion to dismiss for failure to state a claim as a motion for summary judgment.
We will not attempt to summarize the allegations of Count I, if for no other reason than that it contains too many details, conclusions and inconsistent averments. At page 5 of the second amended complaint, plaintiffs thus characterize this Count:
"This Count of Plaintiffs' Complaint is predicated and founded upon an illegal and unlawful conspiracy and series of collusive acts comprising a deliberate, pre-determined and illegal plan and scheme contrived and entered into by the Defendant, Sterling, by and through *762 it's (sic) agents and corporate officers, and the Defendant Labor Organizations and the Labor Organization Officials, Connors and Davis. The purpose of the collusion and conspiracy by and between these Defendants was to allow the Defendant, Sterling, to close down it's (sic) plant in St. Charles, Missouri, and permanently terminate the employment and union recognition of all of these Plaintiffs and to attempt to eliminate and avoid any contractual and/or legal liabilities to these Plaintiffs as a result of the permanent loss of their employment and the loss of the recognition of their Union."
In oral argument, plaintiffs contended that Count I contains much more than a simple conspiracy to do a specific wrong, and that plaintiffs would be entitled to various types of relief thereunder. In view of the liberal construction to be accorded every pleading, we must therefore carefully examine Count I in order to discern what claims have been stated, no matter how defectively, on which relief may conceivably be granted.
Interwoven in the vague, general and verbose allegations of conspiracy and collusion by Sterling, the Unions and the labor officials "to discriminate with hostility against these Plaintiffs to deprive these Plaintiffs of their employment, their Union recognition, their contractual rights and benefits and their legal rights and benefits" (with major emphasis being placed on the collusive negotiation of the collective bargaining agreement so worded as to allow Sterling to accomplish the purpose of the conspiracy) are allegations that Sterling breached the agreement, for the most part at least, by doing the very things the contract authorized.
It appears to be plaintiffs' theory that enough is alleged to state a claim based on breaches of the collective bargaining agreement and, if so, that this Court has jurisdiction of that claim under 29 U.S.C.A. § 185 (Section 301 of the Labor Management Relations Act). Alleged as part of the acts engaged in by defendants in furtherance of the conspiracy are the following:
1) failure and refusal to file and/or process certain grievances in behalf of plaintiffs against defendant Sterling, even though plaintiffs repeatedly requested "that these grievances be filed and/or processed to a proper conclusion as provided by the various provisions of the labor-agreement";
2) failure and refusal of Sterling "to bargain and/or arbitrate the intended closing of it's (sic) St. Charles plant and the effects of the plant closing on the Plaintiffs' employment, Union recognition and contractual rights even though the Plaintiffs made a written demand upon the Defendant, Sterling to bargain such matters";
3) failure and refusal of Sterling to pay plaintiffs seniority termination allowances (the specific matter adjudicated by the summary judgment on Count III);
4) failure of Sterling to pay to plaintiffs their full vacation credits for the year 1963;
5) refusal of Sterling "to employ any of the Plaintiffs in any other plants of the Defendant, Sterling, after the Defendant, Sterling, closed down it's (sic) St. Charles Plant and relocated the St. Charles Plant departments in other plants of Defendant, Sterling"; and
6) refusal of Sterling to "bargain over grievances."
Jurisdiction of claims for relief based on violation of a collective bargaining agreement is conferred upon district courts (without respect to the amount in controversy or without regard to the citizenship of the parties) by Section 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a). See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. And where the agreement contains an arbitration provision the Courts have not only the authority under § 301 but the duty as well, in proper cases, to specifically enforce the agreement. *763 United Brick and Clay Workers of America v. A. P. Green Fire Brick Co., 8 Cir., 343 F.2d 590. If the grievance is one which on its face is governed by the contract, it makes no difference that the Court may deem the claim to be frivolous and completely lacking in merit under the terms of the agreement. "When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, l. c. 569, 80 S.Ct. 1343, l. c. 1347, 4 L.Ed.2d 1403.
Hence, where the issue in dispute is arbitrable (in the sense the parties have agreed to arbitrate that particular dispute), the rule is to order arbitration. United Steelworkers of America v. American Mfg. Co., supra; Builders Association of Kansas City v. Greater Kansas City Laborers District Council, 8 Cir., 326 F.2d 867. Of course, it is now well settled that whether a dispute is arbitrable is for the Courts, although all doubts as to the coverage of the contract must be resolved in favor of coverage, so that arbitration is to be ordered "unless it may be said with positive assurance that the arbitration clause is not suspectible of an interpretation that covers the asserted dispute." United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409. "[A] contrary view would be completely at odds with the basic policy of national labor legislation to promote the arbitral process as a substitute for economic warfare." Local 174 Teamsters v. Lucas Flour Co., 369 U.S. 95, 105, 82 S.Ct. 571, 578, 7 L.Ed. 2d 593.
The grievance clause to which Sterling is a party in this case is very broad.[1] It covers differences which may arise between "the Company and its employees either individually or collectively as to the meaning and application of the provisions of this agreement," and differences "about matters not specifically mentioned *764 in this agreement", as well as "trouble of any kind." It is obvious that at least some of the alleged grievances referred to in Count I (e. g. the alleged refusal to pay seniority termination allowances), even if wholly lacking in merit, are covered by the language of the arbitration clause.[2]
In view of the foregoing, we start with the premise that, absent compelling reasons to the contrary, it is the duty of the Federal Courts to give full play to the means chosen by the parties for settlement of their differences under a collective bargaining agreement. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, l. c. 566, 80 S.Ct. 1343; Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, l. c. 455, 77 S.Ct. 912. How then stands this case?
The parties to the collective bargaining agreement are Sterling, designated as the Company, and District No. 9, designated as the Union. Initially, we note that the present action is brought by individuals, all of whom are alleged to be former employees of Sterling, and not by the Union or other duly certified bargaining agent. This immediately poses the question: May an individual employee or former employee, either alone or in conjunction with other such individuals obtain an order specifically enforcing an arbitration agreement between the company and the union, particularly where, as here, whatever the reason, the Union will not maintain or support such an action?
Smith v. Evening News Assn., 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 emphasizes that at least some "suits to vindicate individual employee rights arising from a collective bargaining contract" are within the coverage of § 301. Suits "to compel arbitration of such individual grievances as rates of pay, hours of work and wrongful discharge" may be maintained. Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; General Electric Co. v. Local 205, UEW, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028. So, too, may actions "to obtain specific enforcement of an arbitrator's award ordering reinstatement and back pay to individual employees, United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, [80 S.Ct. 1358, 4 L.Ed.2d 1424]." And suits having as their purpose the recovery of wage increases "in a contest over the validity of the collective bargaining contract, Dowd Box Co. v. Courtney," 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483, are within the jurisdiction of the Court under § 301. Clearly, the claim here under consideration is "of a type the Courts are empowered to determine under § 301." That the claim asserted may also be an unfair labor practice subject to the primary jurisdiction of the National Labor Relations Board (or even arguably so, San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775) does not exclude jurisdiction of the Courts if the suit is a § 301 action for violation of a contract between an employer and a labor organization. Todd Shipyards Corporation v. Industrial Union of Marine and Shipbuilders Workers, 2 Cir., 344 F.2d 107, 108; Smith v. Evening News Assn, supra; Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483; and Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 101, footnote 9, 82 S.Ct. 571, 7 L.Ed.2d 593.
The foregoing cases do not answer the question here posed, that is, whether these plaintiffs have standing to sue for specific enforcement of the arbitration clause. Significantly for present purposes, Lincoln Mills, General Electric and Dowd Box were each brought by Unions (or, as in Dowd, by union officers in their official capacity). True, Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, establishes *765 that an individual employee may maintain a § 301 suit "to vindicate (his) rights arising from a collective bargaining contract." Smith was an action for wages which the employer had refused to pay in alleged violation of a "no-discrimination" clause in the contract. The right involved was truly personal to the individual employee. What the Smith case teaches is simply that § 301 does "not exclude all suits brought by employees and not by unions." The question of an employee's standing to sue was left open, particularly as to "other clauses in other contracts". See 371 U.S. l. c. 201, footnote 9, 83 S.Ct. l. c. 270. As stated by Mr. Justice Black, dissenting, 371 U.S. l. c. 204, 83 S.Ct. l. c. 272, "[T]he Court studiously refrains from saying when, for what kinds of breach, or under what circumstances an individual employee can bring a § 301 action and when he must step aside for the union to prosecute his claim." Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, which was also brought by individual employees was an action to enjoin their discharge in alleged violation of the collective agreement, pursuant to a decision rendered under the contractual grievance procedure on the ground the decision complained of was allegedly procured by the fraudulent and dishonest conduct of the union representatives. The majority opinion held that Moore had standing to sue under § 301, the action being one "to enforce a collective bargaining contract," but that on the merits he failed to prove his case. The right sought to be vindicated was "uniquely personal."
None of these Supreme Court decisions (and plaintiffs cite no others) hold that an individual employee may maintain a § 301 action to specifically enforce an alleged right to arbitrate a grievance, particularly when, as here, the union is unwilling to do so. Nor do any of the many other cases to which plaintiffs have referred us justify the exercise of § 301 jurisdiction over this type of claim when prosecuted by an individual and not by the union of which he is a member. And as we read the cases, they are inconsistent with any such right of action on the part of plaintiffs.
"The right to arbitrate under a collective agreement is not ordinarily a right incident to the employer-employee relationship, but one which is incident to the relationship between employer and union." Procter & Gamble Independent Union v. Procter & Gamble Manufacturing Company, 2 Cir., 312 F.2d 181, l. c. 184; Carey v. General Electric Company, 2 Cir., 315 F.2d 499. We have noted that the contracting parties to the collective agreement are District No. 9 and Sterling. Article III, Section 4 of the Agreement provides: "The parties agree that as a part of the consideration of this contract any and all disputes and any and all claims, demands or action growing therefrom or involved therein shall be by the contracting parties settled and determined exclusively by the machinery provided in the preceding Section" (which provides for a four step grievance procedure culminating in arbitration).
Black-Clawson Co., Inc. v. International Ass'n of Mach., 2 Cir., 313 F.2d 179, held that an individual employee could not individually prosecute a grievance against an employer through the various steps called for in the bargaining agreement or force the employer to arbitrate the grievance, even though the agreement defined "grievance" as a dispute between the company and the union or the company and any employee. We note that step four as set forth in Section 3 of the instant agreement requires the Company and the Union to submit to arbitration by an impartial arbitrator, and as in Black-Clawson, supra, the company and the union are required to share equally the expenses of the arbitrator and each must bear its own expense in arbitration. The Court there said,
"The union represents the employees for the purposes of negotiating and enforcing the terms of the collective bargaining agreement. This is the modern means of bringing about industrial peace and channeling *766 the resolution of intra-plant disputes. Chaos would result if every disenchanted employee, every disturbed employee, and every employee who harbored a dislike for his employer, could harass both the union and the employer by processing grievances through the various steps of the grievance procedure and ultimately by bringing an action to compel arbitration in the face of clear contractual provisions intended to channel the enforcement remedy through the union." 313 F.2d l. c. 186.
The foregoing statement was quoted with approval in Belk v. Allied Aviation Service Co. of New Jersey, Inc., 2 Cir., 315 F.2d 513, 517. See also Procter & Gamble Ind. Union v. Procter & Gamble Mfg. Co., 2 Cir., 312 F.2d 181, 184, 185, and Ostrofsky v. United Steelworkers of America, 171 F.Supp. 782 holding that under the grievance clause considered as a whole the union has the sole right to process grievances; and Local Union No. 12405, Dist. 50, U. M. W. v. Martin Marietta Corp., 7 Cir., 328 F.2d 945, cert. denied, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 87 ruling that under the terms of the contract only the international union, as the collective bargaining agent, could avail itself of the procedures prescribed in the collective bargaining agreement, and therefore even the local union on "behalf" of which the agreement was entered into could not demand arbitration of grievances over the international's objection. Cf. Local No. 824, United Brotherhood of Carpenters v. Brunswick Corporation, 6 Cir., 342 F.2d 792, in which the union first refused to seek arbitration, then joined in the action.
Plaintiffs cite Retail Clerks International Association v. Lion Dry Goods, Inc., 6 Cir., 341 F.2d 715, but in that case the agreement (Statement of Understanding) expressly limited the right of arbitration to "[a]ny individual employee who may have a grievance," and gave no right of arbitration at all to the union.
That the Union should have the right to control resort to arbitration would appear on principle to be correct. As the collective bargaining representative, its duty is not merely to negotiate but to administer the collective agreement. The very fact that "[t]he grievance procedure is a part of the continuous collective bargaining process" (General Warehousemen & Employees Union No. 636 v. American Hardware Supply Co., 3 Cir., 329 F.2d 789, 792; United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 4 L.Ed.2d 1409), serves to emphasize the conclusion that such "collective bargaining" can be conducted only by the authorized and recognized representative of the employees. Humphrey v. Moore, 375 U.S. 335, 349, 84 S.Ct. 363, 372, 11 L.Ed.2d 370, adverts to the fact that in performing its duty, a union must be free not only to sift out wholly frivolous grievances but also must "be free to take a position on the not so frivolous disputes." The Union, acting as the representative of all members of the bargaining unit, must necessarily be vested with discretion to determine when and the circumstances under which resort to the grievance procedures should be had.
Nothing in Section 9(a) of the Labor Management Relations Act, 29 U.S.C.A. § 159(a), which authorizes the presentation and adjustment of individual grievances of an employee independently of the bargaining representative (provided the adjustment is not inconsistent with the terms of the collective agreement), confers "upon an individual grievant the power, enforceable in a court of law, to compel the employer to arbitrate his grievance." This provision does not create "an indefeasible right mirrored in a duty on the part of the employer." It merely grants the employee "the privilege to approach his employer on personal grievances" and safeguards the employer who voluntarily processes employee grievances "at the behest of the individual employee" from being guilty of an unfair labor practice by "running afoul of the `exclusive bargaining *767 representative' language of the operative portion of section 9(a)." Black-Clawson Co., Inc. v. International Ass'n of Machinists, 2 Cir. 313 F.2d 179, 184-185.
True, plaintiffs charge Sterling with failure to "bargain collectively" (primarily over the plant closing) as well as failure to arbitrate ("bargain and/or arbitrate"), and they seek an order requesting Sterling "to commence to bargain" with them. However, even though an employer's failure to "bargain" respecting a plant closing or "contracting out" work may in some circumstances constitute an unfair labor practice (Fibreboard Paper Products Corp. v. National Labor Relations Board, 379 U.S. 203, 215, 85 S.Ct. 398, 13 L.Ed.2d 233; Textile Workers Union of America v. Darlington Manufacturing Co., 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827, both cited by plaintiffs), this Court is not the forum for prosecution of unfair labor practices. Aggrieved parties are remitted to the National Labor Relations Board for appropriate relief.
Moreover, an employer is obligated to "bargain" concerning such matters and others which are statutory subjects of mandatory collective bargaining only with the duly recognized or accredited representative of the employees. May Department Stores Co. v. Labor Board, 326 U.S. 376, 383-384, 66 S.Ct. 468, 90 L.Ed. 495. The complaint in this case expressly alleges that District No. 9 was certified as the exclusive bargaining agent in behalf of plaintiffs "in accord with the provisions of the National Labor Relations Act of the United States." Under the statute, the "bargaining" must be "collective", through "representatives." Plaintiffs as individuals may not compel Sterling to "bargain" with them.[3]
In apparent recognition of their dilemma, plaintiffs' motion for summary judgment prays inter alia for an order of this Court requiring Sterling to recognize the shop steward plaintiffs "as the `labor organization representatives', `labor organization officials', `union representatives', `union' or `business agents' as those terms are defined and used throughout the labor laws of the United States and the labor agreement" in order to continue the "bargaining" beyond the initial two steps of the grievance procedure. Plaintiffs have not, however, suggested any legal basis for this Court to usurp the exclusive primary jurisdiction of the National Labor Relations Board.
The mere fact, if so, that the authorized bargaining representatives of plaintiffs may have arbitrarily and in bad faith refused to process legitimate grievances does not operate to expand the jurisdiction of this Court. Nothing in Hiller v. Liquor Salesmens' Union Local No. 2, 2 Cir., 338 F.2d 778, relied on by plaintiffs, supports their position that bad faith on the part of the union (even when joined in by the employer) vests the Court with jurisdiction to oust the union as the contracting party and order arbitration at the suit of an individual employee. On the contrary, what was there held was that where the damage action is based upon an alleged conspiracy between the employer and the union to deprive the employee of his rights, *768 enforcement of the arbitration clause (at the employer's instance) would be inappropriate and should be denied. The rationale of the ruling was that under the contract (as here) the arbitration procedure would be under the control of the very party which the employee "claims refused him fair representation, and it would present as adversaries in the arbitration procedure the two parties who, the employee claims, are joined in a conspiracy to defraud him," and therefore the right to sue on the claim cannot be defeated by relegating the employee to an arbitration to which he has not agreed. It is equally true that Sterling has never agreed to any arbitration other than one with the union.
Plaintiffs urge, however, that steps 1 and 2 of the grievance procedure may be taken without affirmative action by the union as such (although even here, the shop stewards, as minor union representatives, participate in the discussion), and therefore as individual employees they may resort to a § 301 action to enforce compliance at least with these preliminary steps, even if they may not ultimately compel arbitration. We do not agree, particularly in the factual situation here presented.
Steps 1 and 2 are truly procedural steps, intended to permit voluntary disposition of grievances and thereby avoid, if possible, the expenditure of time and money both by the union and the employer consequent upon compulsory arbitration. They serve no other purpose. We have been cited to no authority either granting or sustaining an order compelling compliance with procedural requirements of a grievance clause preliminary to arbitration. The numerous cases which discuss alleged failures to comply with preliminary steps do not even remotely intimate that specific performance is appropriate. The Courts have considered the question of the necessity of compliance with such steps only as it bears upon the procedural arbitrability of the grievance. The latter issue has now been resolved by the Supreme Court. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898, affirming Livingston v. John Wiley & Sons, Inc., 313 F.2d 52; and see Bevington & Basile Wholesalers Inc. v. Local Union No. 46, 8 Cir., 330 F.2d 202; Local No. 824, United Brotherhood of Carpenters v. Brunswick Corporation, 6 Cir., 342 F.2d 792, 794; and Avco Corporation, Electronics and Ordnance Division v. Mitchell, 6 Cir., 336 F.2d 289. Livingston teaches that irrespective of compliance with the preliminary steps of the grievance procedure, a right to specific performance of the arbitration clause is not affected. Whether there has been a failure on the part of either party to comply with the preliminary procedures, as well as whether there is a justification for any such failure, may be determined only by the arbitrator in deciding the merits of the grievance and not by the Court.
The essential differences between the voluntary disposition of a grievance by the parties themselves and the compulsion of arbitration in the resolution of the dispute point up the futility of any compulsory "discussion" of the grievances in the factual situation of this case. Sterling, on the management level, has long since explicitly rejected plaintiffs' demands on their merits. The Union, as plaintiffs' bargaining representative, has taken an adverse position on their alleged grievances. Under the admitted facts, the Union, whether rightly or wrongly, does not deem the grievances to have sufficient merit to justify arbitration, so that even if there were formal and nominal compliance with steps 1 and 2, such compliance would do no more than lead the parties up a blind alley of fruitless discussion. It is self-evident that at this late date compliance with steps 1 and 2 could not possibly result in a voluntary settlement of the alleged grievances.
Moreover, resort to the preliminary steps would not be appropriate where, as in this case, the "controversy" affects the entire bargaining unit (as well as all other employees) and not merely individual employees in a particular department *769 of the plant. The face of the contract reveals that the St. Charles plant, during the period it was in operation, had a number of departments (possibly as many as seven), each of which presumably had at least one foreman and probably more in those departments which operated more than one shift. Under plaintiffs' theory, as applied to the language of the grievance clause, each of these foremen would be required to separately discuss the same basic issue with those of the plaintiffs who had formerly been employed under his supervision. Compounding the confusion would be the fact that more than two years have elapsed since the admittedly permanent closing of the St. Charles plant. Unquestionably, the St. Charles foremen have long since departed, even though some of them may now be employed at other plants.
Of course, the foreman did not vanish when the plant was closed permanently (Republic Steel Corp. v. Maddox, 379 U. S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580), but surely his existence and particularly his limited authority to discuss individual grievances do not continue forever. Whether the St. Charles plant should be closed and who should be employed at other plants operated by Sterling involve basic company policy, truly decisions which can be made only at the management level. No individual foreman or group of foremen, or even department superintendents have the authority to overrule decisions of their superiors with respect to company policy, and particularly so many years after the decisions have been made and fully implemented. Hence, even if this Court had the power to make an order requiring resort to steps 1 and 2, such an order would be completely meaningless. We add that any employer who refused without justification to discuss a grievance through its foreman would be in no position to defend a damage action on the basis of its own default. Under the averments of the complaint, liberally construed, plaintiffs, to paraphrase Maddox, have attempted use of this preliminary step of the grievance procedure. If so, no more should be required of them. We note in this connection that at no time during the course of the instant litigation has Sterling ever contended that the alleged failure to comply with preliminary steps 1 and 2 bars the maintenance of this action.
Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, although holding that the discharged employee's breach-of-contract action for severance pay was barred because of his failure to utilize the grievance procedures, is clearly distinguishable. In Maddox, the employer consistently objected to the maintenance of the action, and the union was not shown to have acquiesced in or supported the lawsuit. What Maddox teaches is that an individual employee has no unilateral right "to completely sidestep available grievance procedures in favor of a lawsuit," and thereby foreclose the contractual right of the union to determine whether the alleged grievance should be submitted to arbitration. Unless the contract provides otherwise, "the employee must afford the union the opportunity to act on his behalf," and "must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress."
In the instant case, plaintiffs have alleged, from the very inception of this litigation, that although ample opportunity has been afforded the union to process their grievances, the union has adamantly and in bad faith refused to press their claims. They allege, in substance, they have attempted use of the contract grievance procedure. Additional monetary relief is sought for the very reason that the union has allegedly improperly refused to act on behalf of plaintiffs. Maddox has express reference to "the normal situation," not the abnormal situation here alleged, and leaves open the question of the form of redress when "the union refuses to press or only perfunctorily presses the individual's claim."
We suspect, from a reading of the pleadings, the motion for summary *770 judgment, and the briefs, that plaintiffs' real purpose in seeking specific performance (to any extent no matter how limited) is to obtain, if they can, the ancillary relief they have also prayed for, namely, an order requiring Sterling to restore the status quo ante by the payment to plaintiffs of all wages and benefits to which they would have been entitled had not their employment been terminated and to continue to make such payments "pending the conclusion of the bargaining and/or arbitration" between the parties. However, an order such as plaintiffs seek is beyond the jurisdiction of this court. Cases affirming and enforcing comparable orders of the National Labor Relations Board (Fibreboard v. National Labor Relations Board, 379 U.S. 203, 215-217, 85 S.Ct. 994, 13 L. Ed.2d 827) or awards of arbitrators (United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 1424; cf. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 459, 77 S.Ct. 912, 1 L.Ed.2d 972, are beside the point. The power of the National Labor Relations Board to make such orders is conferred by the National Labor Relations Act, Section 10(c), 29 U.S.C.A. § 160(c), and whether such power shall be exercised in any case is for the Board and not for the Court, National Labor Relations Board v. Seven-Up Bottling Company of Miami, Inc., 344 U.S. 344, 348, 73 S.Ct. 287, 97 L.Ed. 377. And the authority of an arbitrator to make such an award is dependent upon the language of the contract, so that when the Court enforces the award it is granting relief under the contract and not exercising jurisdiction independent thereof.
Even if there was a legal basis for an individual employee or former employee to obtain specific performance of the preliminary grievance procedures prescribed by the contract here involved, it is our opinion that under the undisputed facts plaintiffs are now precluded as a matter of law from obtaining such an order.
The contract calls for an earnest effort to settle the differences between the parties "at the earliest possible time". It would appear that "the earliest possible time" has long since passed, and with plaintiffs' conscious acquiescence as evidenced by the course of this litigation. We believe that as a matter of fundamental fairness employees who have grievances they desire to process should not be permitted to sleep upon their rights while exploring other legal means of redress. Surely, there must eventually come a time when such an employee, with full knowledge of his union's refusal to act, will be held by his conduct to have waived or abandoned the mode of redress spelled out in the contract as the exclusive machinery for resolving disputes.
The Supreme Court has recognized that the parties to a collective bargaining agreement (and in this context, under plaintiffs' theory, individual employees would necessarily be included) may repudiate a right to arbitrate their disputes. Drake Bakeries v. Bakery Workers, 370 U.S. 254, 262, 82 S.Ct. 1346, 8 L.Ed.2d 474. As we view the admitted facts, plaintiffs (and the other parties) have long since repudiated any right they might otherwise have had to an order specifically enforcing the grievance clause. Although, as noted in Minnesota Joint Board v. United Garment Mfg. Co., 8 Cir., 338 F.2d 195, the use of the terms "waiver" and "estoppel" may be ill-chosen in this area, the word "repudiation" clearly conveys the thought that a party has demonstrated its intention that it would not submit the matter to arbitration if it were called upon to do so.
This suit was filed six months after the termination of plaintiffs' employment. The original complaint contained not a single word intimating a desire on the part of plaintiffs to resort to the grievance process. Instead, substantial money damages of many millions of dollars was sought. Nor did the first amended complaint advert to the grievance *771 procedures of the contract or seek performance thereof. Again, only a substantial money judgment was sought. In connection with both complaints, plaintiffs filed motions for summary judgment, the judgment sought, in each instance, being for money and money alone. This conduct is utterly inconsistent with the requirements of the grievance clause. The second of these motions was submitted to the Court in conjunction with Sterling's similar motion. Not until the second amended complaint was filed, almost two years after the plant had closed, did plaintiffs judicially intimate any intention to utilize the grievance procedure as individuals, and then only after they had lost on the merits their damage claim asserted in Count III. And during this two year period, the St. Charles plant had closed beyond all possibility of reopening. Here, we have "a fundamental and long lasting change in the relationship of the parties prior to the demand for arbitration", a circumstance not present in Local No. 721 United Packinghouse Workers v. Needham Packing Co., 376 U.S. 247, 253, 84 S.Ct. 773, 11 L.Ed.2d 680.
In Minnesota Joint Board v. United Garment Mfg. Co., supra, the Court found nothing more than a prior disregard by both parties of the right to seek timely arbitration, as distinguished from conduct evidencing a repudiation of the obligation. In that posture of the case, it was held that neither party could deprive the other of its right to arbitration, certainly not by the mere unilateral act of making the controversy the subject of a claim for legal damages against the other. Here, Sterling has never sought to stay this action or require the alleged controversy to be submitted to arbitration. To the extent Sterling has been "deprived" of a right to arbitration, it has acquiesced in and consented to such deprivation. Sterling has not objected and is not complaining that plaintiffs have attempted to "deprive" it of the right of arbitration. Rather, it is plaintiffs who, after having made the controversy the subject of a claim for legal damages against Sterling and prosecuting that claim for some 18 months, during which time a portion of the claim was adjudicated adversely to plaintiffs on the merits, now have second thoughts on the subject.
We have already adverted to the fact that the union has been afforded the opportunity to act on behalf of plaintiffs, but has refused to press their claim. And when note is taken of the fact that Sterling sought and obtained a judgment on the merits of Count III of the first amended complaint, we believe it clear on the facts here for decision that all the parties involved, the employer and the Union, as well as the employees, have repudiated, not merely waived, the arbitration and other grievance provisions of the collective agreement.
Insofar as concerns plaintiffs' latest motion for summary judgment what we have heretofore said is dispositive. In addition, even if this Court could otherwise now compel Sterling, at the suit of plaintiffs, to comply with the grievance procedures of the contract, plaintiffs have made an insufficient showing on the instant record. If it be assumed, as plaintiffs allege, that none of their "grievances were processed by Sterling, or even by the Union, (and the Exhibits filed by plaintiffs bely any such assumption), such fact of itself, without more, would not entitle plaintiffs to a summary judgment compelling Sterling to commence bargaining at step 1 which provides, "The employee, the shop steward and the foreman shall attempt a satisfactory settlement of the grievance."
Compliance with step 1 requires action not merely by Sterling's foreman, but by the aggrieved employee and the shop steward as well. The record before us does not factually demonstrate whether there was any request made to his foreman by any employee and shop steward to "attempt a satisfactory settlement of the grievance." The affidavit of plaintiff Woody which was filed in support of the motion for summary judgment merely *772 states: "Affiant further states that each of the Exhibits identified as `Grievances' and numbered Exhibit 3 (a through h) have been duly filed with the Defendant, Sterling. These Grievances have never been processed beyond the mere act of filing the Grievances. No Grievance was ever taken to step One as provided in Exhibit A (Page 8). The processing of the said Grievance in behalf of Machinist Union employees of Defendant, Sterling is one of the responsibilities of this Affiant as Chief Shop Steward." Neither Woody nor any other shop steward plaintiff has attempted to explain what would appear to be a failure on their part to carry out the responsibilities imposed on them in the first step of the grievance procedure. On this record, we do not know whether or, if so, when Woody or any other plaintiff during the two years intervening between the time of the plant closing (and the resultant termination of their employment), and the filing of the present motion for summary judgment actually attempted to seek out the foreman for the purpose of discussing their alleged grievances.
Merely because neither Woody nor the other plaintiffs have "refused" to "bargain" with Sterling regarding any grievance or regarding the reason Sterling closed its St. Charles plant, or even because plaintiffs are now ready to so "bargain" does not of itself place Sterling in default of its contractual obligation to discuss the grievances through its foremen, sufficient to warrant the grant of a summary judgment by this Court compelling compliance by Sterling as the defaulting party. A default on the part of the employer, as distinguished from a mutual failure to act, is one of the material facts which must appear. Hence, whatever it is that plaintiffs now seek (whether it is compliance with step 1 or 4 or any intermediate step of the grievance clause) this Court may not order compliance summarily. Plaintiffs have wholly failed to sustain their burden of showing that there is no genuine dispute as to all of the essential material facts.
In view of all the foregoing, plaintiffs' motion for summary judgment should be and is hereby overruled.
We next consider plaintiffs' claim for relief based on the alleged collusion and conspiracy, essentially the same claim heretofore asserted in Count I of the first amended complaint with respect to which we sustained defendants' motions to dismiss. Further consideration convinces us that our original disposition was correct.
Taking note of the observation in our memorandum opinion of January 21, 1965 that no discrimination, hostile or otherwise, was asserted as a basis for their claim, plaintiffs have now interpolated into the allegations of the conspiracy charge vague conclusions of allegedly "hostile discrimination", this phrase evidently being used by plaintiffs simply as words of color to characterize the allegedly collusive actions of the unions. However, the pleaded facts demonstrate there was no discrimination at all.
Where a union is the duly authorized bargaining agent it must represent all employees fairly, whether or not they are members of the union, and may not abuse its statutory powers to discriminate against some of the employees it represents. The duty of fair representation is not derived from the collective bargaining agreement, but is implied from the union's rights and responsibilities conferred by federal labor statutes, Humphrey v. Moore, 375 U.S. 335, 356, 84 S.Ct. 363, 11 L.Ed.2d 370 (Goldberg, J. concurring).
Typical of cases involving individual or class claims based on a union's alleged breach of duty to represent all employees without hostile racial discrimination are Syres v. Oil Workers International Union, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785, reversing 5 Cir., 223 F.2d 739; Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood *773 of Locomotive Firemen & Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L. Ed. 187; and Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283. So, too, Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 held that the bargaining representative's duty not to draw "irrelevant and invidious" distinctions among those it represents does not end with the making of an agreement between union and employer. Collective bargaining is a continuous process, so that the union may no more unfairly discriminate in protecting an employee's rights allegedly secured by the contract than in negotiating the collective agreement.
We add that although most cases of hostile discrimination involve racial discrimination, jurisdiction of the courts is not so limited, but the action may be maintained whether the discrimination is based on race or some other ground. Haley v. Childers, 8 Cir., 314 F.2d 610, 617. A comparable case is Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 338, 73 S.Ct. 681, 97 L.Ed. 1048, holding that the bargaining representative owes complete loyalty to all whom it represents, and must make an honest effort to serve the interests of all members of the bargaining unit, without hostility.
Stripped to its essentials, the conspiracy claim is premised on allegedly bad faith bargaining between Sterling on the one hand and representatives of the union on the other. Absent bad faith, there would be no impropriety in negotiating the collective agreement containing the specific terms and limitations therein of which plaintiffs now complain. Nor would there be any impropriety on the part of the union in refusing to further process some of plaintiffs' alleged grievances. As was said in Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 338, 73 S. Ct. 681, 686, 97 L.Ed. 1048. "Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages, as in the light of all relevant considerations, they believe will best serve the interests of the parties represented." Again, "A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." We note that in both Huffman and Moore (375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370) the Supreme Court found as facts the existence of good faith and honesty of purpose.
In Moore, the union was charged with dishonesty in the settlement of grievances at issue under the collective bargaining agreement in breach of its duty of fair representation, and on that theory Moore filed a class action on behalf of the employees adversely affected seeking to enjoin the implementation of a decision which would result in his discharge. A majority of the Court held that the action was properly brought under § 301 (on the theory that under the circumstances alleged the decision fraudulently procured would not be a valid basis for Moore's discharge, so that the discharge would constitute a violation of the contract), and therefore found it unnecessary to determine whether a violation of the duty of fair representation owing to an individual employee either is or arguably may be an unfair labor practice under the Labor Management Relations Act.
Plaintiffs rely upon Hiller v. Liquor Salesmen's Local No. 2, 2 Cir., 338 F.2d 778. The complaint in that case alleged a conspiracy between an employer and a union directed against a single individual to deprive him of his employment rights. The Second Circuit construed the claim as one based upon the denial by the union of the right of fair representation, and on that theory held that plaintiffs, as the representatives of the deceased employee, were entitled to maintain an action for damages. The Hiller case is distinguishable because it is one involving "hostile discrimination" against an individual employee which was not arguably subject to the exclusive primary jurisdiction of the Labor Board (although the Court did not discuss that question).
*774 The normal situation which involves an alleged denial by a union of the right to fair representation to some members of the bargaining unit is not presented by the second amended complaint. Entirely absent here is the essential requirement that there be an intent to hostilely discriminate against a portion of the members of the bargaining unit. Hardcastle v. Western Greyhound Lines, 9 Cir., 303 F.2d 182, 185. See also Fogg v. Randolph, D.C.N.Y., 244 F.Supp. 885. Under the facts alleged in the instant complaint, all the employees represented by District No. 9 were treated alike  not well or properly, and even with hostility, but certainly alike and without discrimination, hostile or otherwise. As we construe the allegations of the second amended complaint, plaintiffs charge in substance that both the employer and the unions failed and refused to bargain collectively and to confer in good faith in respect to wages, hours and other conditions of employment and thereby interfered with the employees of Sterling in the exercise of rights guaranteed to them by § 157, 29 U.S.C.A.
The conduct charged in the complaint is the very antithesis of good faith bargaining. We hold that the activities of which plaintiffs complain are at least arguably protected by section 7 of the National Labor Relations Act, 29 U.S.C. A. § 157, or constitute unfair labor practices prohibited by section 8 of the Act, 29 U.S.C.A. § 158 and therefore are subject to the exclusive primary jurisdiction of the National Labor Relations Board, San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L. Ed.2d 775; Local 100 v. Borden, 373 U. S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638; Local No. 207 v. Perko, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646; and Cosmarck v. Struthers Wells Corp., 412 Pa. 211, 194 A.2d 325. Cf. Rinker v. Local Union No. 24 of Amalgamated Lithographers, D.C.Pa., 201 F.Supp. 204, 206. This Court does not have jurisdiction to determine the merits of the claim.
In view of our ruling on the jurisdictional issue, we express no opinion on the merits of plaintiffs' claim of collusion and conspiracy. However, for the benefit of those who may have no opportunity to read the second amended complaint and the memoranda filed by plaintiffs, fairness to the defendants requires us to note that plaintiffs have never suggested any possible motive for the serious misconduct attributed to the unions and the union officials, nor even intimated, much less specifically alleged, what conceivable benefit these defendants could derive from the collusion and bad faith charged to them.
There remain for consideration only the claims for relief in respect of alleged breaches of contract, such as failure to pay seniority termination allowances, of which the Court has § 301 jurisdiction. We ruled the issue of seniority termination allowances in our memorandum opinion of January, 1963. Upon consideration of the unassailable proof, we granted Sterling a summary judgment on Count III of the first amended complaint, holding that under the facts the contract did not entitle plaintiffs to the allowances sought.
The labor agreement expired and ceased to be effective February 28, 1963. Seniority termination allowances were payable thereunder only in the event of the termination of employment during the term of the agreement as the direct or indirect result of the permanent closing of the St. Charles plant. The notice to each plaintiff expressly stated that he would be terminated as an employee at the end of the day February 28, 1963. His employment continued to that time. Moreover, all plaintiffs were paid for their employment through February 28, although at Sterling's direction they performed no productive work processes that day.[4] In granting the summary *775 judgment, we found and ruled that under the undisputed facts, plaintiffs' employment was not terminated during the term of the labor agreement but rather, at the close of business on February 28, 1963 when the contract expired. For such reason, Sterling was not obligated to pay the allowances. We adhere to this ruling.
The rather vague claim of plaintiffs for vacation allowances is premised on the theory of a temporary lay-off on February 27, 1963 as distinguished from a termination of employment at the close of the business day of February 28, 1963. (See in this connection paragraph 5(e) (3) of Count I, setting forth in effect that certain provisions of Article VIII of the collective bargaining agreement had the effect of eliminating liability for vacation time which would otherwise have existed.) The facts which sustain our grant of a summary judgment on the seniority termination claim are equally applicable to the claim for vacation allowances, inasmuch as plaintiffs were not temporarily laid off nor was their employment terminated during the term of the collective bargaining agreement. The disposition we have made of the seniority termination claim necessarily impels the dismissal of the factually related vacation allowance claim.
Other than the foregoing, the only other breach of contract claim is that premised upon Sterling's alleged failure to "bargain" with respect to the plant closing. Plaintiffs do not spell out wherein the collective agreement was breached by the alleged failure to "bargain" nor the legal basis upon which they are entitled to money damages thereby. Plaintiffs' approach is two pronged and, again somewhat inconsistent. They complain in various ways of (1) Sterling's refusal to "bargain" and (2) (very vaguely) of an alleged breach of contract "in various seniority sections thereof" by refusing to employ plaintiffs in any other plants after Sterling closed down the St. Charles plant and "relocated" its departments in other plants.
Insofar as Sterling's refusal to "bargain" is concerned, plaintiffs have referred us to no provision of the contract which was allegedly breached thereby. We again note that even if an employer may be guilty of unfair labor practice by the device of a "runaway shop" (provided his motivation is anti-union), cf. Textile Workers Union v. Darlington Manufacturing Co., 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827 no question of a contract violation is involved where, as here, the contract contains no "runaway shop" clause. And to the extent "bargaining" may be required, an employer's failure in this respect is at most an unfair labor practice and not a contract violation. What plaintiffs are really seeking is to *776 have their employment (or more accurately the fruits of their former employment) extended for an indefinite period after the contract was legally terminated.
We consider, then, whether plaintiffs are entitled as of right to employment in other plants of Sterling. Plaintiffs have cited no specific provision of the contract which grants them an enforceable right to such employment, nor do we find any language "in various seniority sections" of the collective agreement which fairly supports plaintiffs' claim.
The case cited and principally relied upon by plaintiffs, Zdanok v. Glidden Company, 2 Cir., 288 F.2d 99 is of doubtful authority at best and is distinguishable on its facts. In that case, the contract recited that it was made by the company for and on behalf of its plant facilities located at a specific address at Elmhurst, New York. The majority of the Court held that this narrow geographic descriptio was not to be treated as "setting fixed boundaries upon the scope of the contract" but rather was a "statement of location" and "analogous to the description personae familiar to the law in various situations." 288 F.2d 1.c. 103, 104. Dissenting Chief Judge Lumbard pointed out the absence of any provision of the contract extending the area to which seniority rights were to apply beyond the single plant described, and was of the opinion the agreement did not give the employees the right to follow the work to the site. We agree with Judge Lumbard.
In Oddie v. Ross Gear and Tool Company, 6 Cir., 305 F.2d 143, the agreement recited that the Company recognized the union as the exclusive representative of its employees of its plant or plants located in the City of Detroit. The Court held that the seniority and recall-to-work rights granted by the contract had no application to a plant relocated in another area, even during the term of the contract. The Court stated that the agreement in Zdanok "was materially different", there being "no specific geographical limitation such as contained in the agreement in the present case." 305 F. 2d 1.c. 149. Whether there is in fact a "material" difference between the two cases we need not rule, although the second Zdanok go-around, 327 F.2d 944, 952, could see no distinguishing features. In that case, adverting to the great amount of critical discussion the first decision had engendered, the Court conceded that the Oddie decision has created "doubt whether, if other similar contracts should come before us for construction", the same result would be reached. And Judge Lumbard, concurring, made it clear that although the original Zdanok decision should be followed as "the law of the case", that decision "represents the views of but one judge of this circuit and is not entitled to precedential value (even) so far as this circuit is concerned."
Factually, the provisions of the collective agreement involved in this case are far more similar to Oddie than to Zdanok. The contract recites that the company recognizes District No. 9 as the exclusive bargaining agent for all employees in the company's St. Charles plant. Of significance also is the further fact that at the time the contract was negotiated, Sterling concededly operated plants in various other areas.
Having read some of the law review articles referred to in the second Zdanok opinion, (327 F.2d 1.c. 952, footnote 11), we prefer to follow Oddie. For whatever it may be worth, we note that certiorari was denied in Oddie, 371 U.S., 941, 83 S.Ct. 318, 9 L.Ed.2d 275. Even this negligible significance was minimized in the second Zdonak appeal, 327 F.2d, 1.c. 952, footnote 10, because of the Supreme Court's expressed belief (in ruling the limited issue on which certiorari had been granted in the first Zdanok case) that the Circuit Court had considered and decided the issue as "a question of (New York) state contract law." Glidden Company v. Zdanok, 370 U.S. l.c. 537, 82 S.Ct. l.c. 1466.
The construction we have placed upon the instant contract accords with that of plaintiffs themselves as set forth in paragraph *777 5(e)(1) of the second amended complaint which states (omitting words of color), "Article I, Recognition, Page 3 of Exhibit `A' limited the recognition of the Plaintiffs' labor union to Defendant, Sterling's `St. Charles Plant' * * * This * * * clause prevented these Plaintiffs from having employment available to them in any other plant of Defendant, Sterling and in particular in any new plant of Defendant, Sterling which was re-located in an area other than St. Charles, Missouri."
We have considered Count I at some length in an effort to discern from the mass of verbiage whether plaintiffs have stated therein some claim within the jurisdiction of the court upon which relief can be granted. We have found none.
The motions to dismiss Count I should be and are hereby sustained.
Count II is merely a rescript of the allegations of Count I, with the addition of a claim for exemplary damages based upon the alleged wilfulness of the conduct alleged. Our disposition of Count I necessarily results in a dismissal of Count II. It is unnecessary therefore to determine whether punitive damages are recoverable, a question the parties have not briefed.
Count V is substantially the same as Count II of the first amended complaint. It realleges the averments of Count I as they relate to the labor organizations and the union representatives, and asserts that the conduct complained of constitutes a breach of the obligation of these defendants to represent plaintiffs fairly and without hostile discrimination. As held in ruling Count I, the activities complained of are arguably and potentially unfair labor practices over which the National Labor Relations Board has exclusive primary jurisdiction. And since Count VI simply involves a demand for punitive damages on account of the alleged wilfulness of the conduct set forth in Count V, our ruling on that Count is also dispositive of Count VI.
In view of the foregoing, the motions to dismiss Counts II, V and VI should be and are hereby sustained.
The numerous other motions filed by defendants have been rendered moot by our rulings on the motions to dismiss.
It is therefore ordered that plaintiffs' motion for a new trial on Count III be overruled, that plaintiffs' motion for summary judgment against defendant Sterling be denied, that defendants' motions to dismiss plaintiffs' second amended complaint be sustained, and that said second amended complaint and each of the counts thereof be dismissed, all at plaintiffs' costs.
NOTES
[1] "Section 3. Should differences arise between the Company and its employees either individually or collectively as to the meaning and application of the provisions of this agreement, or should differences arise about matters not specifically mentioned in this agreement, or if any trouble of any kind arises, an earnest effort shall be made to settle such differences at the earliest possible time by use of the following procedure:

"Step 1: The employee, the shop steward and the foreman shall attempt a satisfactory settlement of the grievance.
"Step 2: If no satisfactory settlement is reached between the employee, shop steward and the foreman, the grievance must be referred in writing to the Department Superintendent who shall attempt to settle the difference between the employee, shop stewards, foreman and chief shop steward.
"Step 3: If any grievance is not settled by the foregoing methods it shall be considered by a committee composed of the Business Representative designated by the Unions, an officer of the Company and the group listed in Step 2. In the event it becomes necessary for the Chief Steward to visit either the department office or the main office on a grievance, the Chief Steward shall be accompanied by the department Steward involved and the aggrieved employee involved.
"Step 4: In the event the Company and the Unions cannot agree upon the disposition of the grievance, any such matter shall be submitted to arbitration by an impartial Arbitrator to be selected by mutual agreement between the Company and the Unions. In the event the Company and the Unions cannot agree on selection of the Arbitrator within five (5) days (the time may be extended by mutual agreement) the Arbitrators shall be selected by the Company and the Unions from a panel of five (5) submitted by the Federal Mediation and Conciliation Service. The decision of the Arbitrator shall be final and binding on all parties. The Company and the Unions shall share equally the expense of the Arbitrator and each shall bear its own expense of the arbitration. Should the Company refuse to arbitrate any dispute as herein set forth, the Unions shall be free to strike.
"Any agreement or settlement of differences arrived at between the Company and the Unions pursuant to this Section shall be reduced to writing."
[2] In our memorandum opinion of January 21, 1965, we so ruled, but held, in effect that the parties had jointly acquiesced in waiving the application of that clause.
[3] We note that the "indisputable" facts of record, evidenced by the collective agreement, demonstrate that the parties to the contract (Sterling and the Union) actually "bargained" with respect to the right of Sterling to close its St. Charles plant and relocate its facilities. The results of that bargaining were the express contractual provisions recognizing the right of Sterling "to close down permanently the St. Charles plant, to relocate permanently any department thereof or to discontinue permanently any such department." Although plaintiffs complain that these and other provisions of the agreement (e.g., the limited recognition clause) were bargained for in bad faith, they nevertheless concede that the contract as negotiated is binding upon them and seek § 301 relief on that theory. They are, therefore, in any event in no position to insist upon renewed bargaining as individuals over issues that were resolved two years earlier when the instant contract was negotiated and the strike settled.
[4] The contractual provisions relating to termination allowances must be read together and reasonably construed to effectuate the manifest intention of the parties as expressed by the language employed. Prentice v. Rowe, Mo.App., 324 S.W.2d 457, 465. Termination allowances were provided for as a means of at least partially compensating those employees who, by reason of the plant closing before the expiration of the contract, would thereby be deprived of the opportunity to earn wages during the period between the termination of their employment and the plant closing. The provisions relating to termination payments were not intended to grant bonuses to employees who were able to and did receive full compensation for employment to the very end of the contract period. The mere fact that plaintiffs were not required to render services on the last day of their employment does not make them any the less employees of Sterling on that day or constitute an earlier termination of their employment. We cannot agree that their right to substantial additional sums was made to depend on whether the employees were permitted to perform productive work on the last day of the contract period.

We also believe that within the meaning of the language used in the contract construed as a whole, the St. Charles plant was closed down permanently at the expiration of the agreement, and not on February 27, 1963, even though no production processes were performed on the last day of the contract period. And even plaintiffs expressly concede (Paragraph 5(e) (2) of the second amended complaint) that "Article IV, Seniority, Section 1, subparagraph (j), eliminated the legal liability of the Defendant, Sterling for payment of termination allowances" if the St. Charles plant was closed down permanently "at the expiration" of the contract.